The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on August 10, 2016, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: August 10, 2016**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 16-11242 |
| | ) | |
| RICHARD A. GREER & | ) | Chapter 7 |
| DEE M. GREER, | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | | |

MEMORANDUM OF OPINION[1]

This case is before the Court on the Chapter 7 trustee's renewed objection to the debtors' claim of exemptions and motion for turnover order. Specifically, the trustee objects to the debtors' claim of exemption in an $881.13 portion of funds held in a checking account and $500 of value from a coin collection. The debtors claim that all the funds held in the checking account are exempt pursuant to 42 U.S.C. § 407 and Ohio Revised Code § 2329.66(A)(3), (A)(10)(b), and (A)(18).

---

[1] This opinion is not intended for official publication.

For the reasons that follow, the Court overrules the trustee's objection to the debtors' claim of exemption in the checking account. Because the debtors have not amended their exemptions in Schedule C to conform to arguments made in open court and in their briefing, the Court will give the debtors until August 31, 2016, to file a second amended Schedule C under Rule 1009. The trustee or other party in interest will then have 30 days to object to the debtors' amended exemptions under Rule 4003. Because there are a number of uncertainties as to the status of the coin collection, including whether it is of inconsequential value and benefit to the estate given the amended schedule of exemptions likely to be filed, the Court overrules, without prejudice, the trustee's motion for turnover.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## BACKGROUND

On March 9, 2016, the debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On May 24, 2016, the Chapter 7 trustee filed

an Objection to Debtors' Claim of Exemptions and Motion for Turnover Order (Docket No. 26) seeking $1,377.06 in purported nonexempt assets. On June 10, 2016, the debtors filed Amended Schedules A/B and C and Summary of Schedules (Docket No. 28) and a Response to the Trustee's Objection and Motion for Turnover (Docket No. 30). Debtors' amended Schedule A/B included the following assets: (1) a 2006 Buick Rendezvous, owned by Richard A. Greer, valued at $4,563; (2) a coin collection, valued at $500; (3) $14 in cash on hand; and (4) a Citizens Bank checking account with a balance as of the petition date of $2,517.06. Among other claimed exemptions not in dispute, the debtors' amended Schedule C claimed as exempt: (1) $3,675 in value on the Buick Rendezvous under Ohio Rev. Code § 2329.66(A)(2); (2) $888 in value on the Buick Rendezvous under Ohio Rev. Code § 2329.66(A)(18); (3) $14 in cash under Ohio Rev. Code § 2329.66(A)(18); (4) $667.06 from the Citizens Bank account under Ohio Rev. Code § 2329.66(A)(10)(b); (5) $692 from the Citizens Bank account under 42 U.S.C. § 407; (6) $450 from the Citizens Bank account under Ohio Rev. Code § 2329.66(A)(3); and (7) $708 from the Citizens Bank account under Ohio Rev. Code § 2329.66(A)(18).

On June 14, 2016, the trustee filed a reply renewing his objection to the debtors' claim of exemptions and requesting a turnover order in the amended

amount of $1,381.13. (Docket No. 31). A hearing was held on June 21, 2016, and the Court issued a supplemental Briefing Scheduling Order (Docket No. 33). On July 5, 2016, the debtors filed a Second Response to the Trustee's Objection (Docket No. 36). On July 6, 2016, the trustee filed a supplemental brief, (Docket No. 37), and the debtors filed a third response on July 15, 2016. (Docket No. 38). Because the debtors have not amended their exemptions in Schedule C to conform to all arguments in open court and in their briefing, the Court will address some exemption claims not reflected in the debtors' most recent Schedule C. The Court will give the debtors additional time to file a second amended Schedule C, and the trustee will then have 30 days to object.

## Debtors' Checking Account

The debtors have a joint checking account at Citizens Bank (hereinafter, the "checking account"). On February 22, 2016, the checking account had a balance of $4.19. On February 24, 2016, $2,874 from Richard Greer's federal tax refund and $692 from Dee Greer's Social Security benefits were deposited into the checking account bringing the total balance to $3,570.19. From February 25, 2016, through February 29, 2016, the debtors withdrew a total of $815.29 from the checking account for household expenses leaving a total balance of $2,754.90. On March 1, 2016, $1,396.98 from Richard Greer's pension and

$270.08 from Dee Greer's pension were deposited into the checking account bringing the total balance to $4,421.96. From March 1, 2016, through March 2, 2016, the debtors withdrew $1,263.75 from the checking account leaving a total balance of $3,158.21. Of this $1,263.75 withdrawal, $1,000 was for attorney's fees for the bankruptcy and $263.75 was for household expenses. On March 3, 2016, $427 from Richard Greer's state tax refund was deposited into the checking account bringing the total balance to $3,585.21. From March 3, 2016, through March 9, 2016 – the date the petition was filed – the debtors withdrew $1,068.15 from the checking account leaving a petition date balance of $2,517.06.

## Coin Collection

It is not clear to the Court whether Richard Greer's coin collection has already been liquidated or if the debtors still possess the collection itself. Similarly, it is not clear whether the $500 value of the collection refers to appraised value or liquidated value. A chart attached to the trustee's first objection references a $528 value for the coin collection next to the word "appraisal." However, that same chart also refers to two deposits made to the checking account by Richard Greer for "coin collection." The first is a $530 deposit made on January 27, 2016. The second is a $220 deposit made on February 21, 2016. (Docket No. 26). The debtors also claim that the trustee

5

requested an appraisal for the coin collection on April 18, 2016, and that all the documentation requested by the trustee was delivered on April 20, 2016. (Docket No. 36). The checking account bank statement attached to the debtors' first response and the trustee's supplement references a $220 deposit that was made on February 12, 2016 – not February 21, 2016 – but does not cover the period prior to January 28, 2016. (Docket Nos. 30 and 37). However, the debtors' Amended Schedule A/B, a chart provided by the trustee in his reply, and an addendum to the debtors' second response all agree that the value of the coin collection is $500. (Docket Nos. 28, 31, and 36).

## DISCUSSION

Section 541 of the Bankruptcy Code provides that the commencement of a case creates an "estate," which, subject to a few specifically enumerated exceptions, is comprised of all the legal and equitable interests in property owned by a debtor at the commencement of the case. *See* 11 U.S.C. § 541. Section 522 of the Bankruptcy Code allows a debtor to claim certain property as exempt from the estate. States may adopt the federal exemptions provided in 11 U.S.C. § 522 or establish their own exemptions. *See* 11 U.S.C. § 522. Ohio has elected to opt out of the federal exemptions. *See* Ohio Rev. Code § 2329.66. "Therefore, any property that a debtor domiciled in Ohio seeks to exempt must fall within an

exemption authorized under Ohio law or nonfederal bankruptcy law."
*In re Schramm*, 431 B.R. 397, 400 (B.A.P. 6th Cir. 2010).

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotation marks and citations omitted). "Exemptions further this policy goal by allowing a debtor to protect property which is necessary for the survival of both the debtor and the debtor's family." *In re Schramm*, 431 B.R. at 400. "As such, exemptions are to be construed liberally in favor of the debtor." *Id.* (citing *Daugherty v. Cent. Trust Co. of Ne. Ohio, N.A.*, 28 Ohio St. 3d 441, 504 N.E.2d 1100, 1104-05 (1986)). "A party objecting to the debtor's claim of exemptions 'has the burden of proving that the exemptions are not properly claimed.' " *Id.* (quoting Fed. R. Bankr. P. 4003(c)).

<u>Debtors' Checking Account</u>

On the date the petition was filed, the balance of the checking account was $2,517.06. This total is the sum of the $4.19 original balance and deposits (the debtors' pensions, Dee Greer's Social Security, and Richard Greer's tax refunds), less payments the debtors made from the account. The debtors claim – and the trustee has not objected – that the full values of the pensions are exempt under Ohio Rev. Code § 2329.66(A)(10)(b) and the Social Security benefit is exempt

7

under 42 U.S.C. § 407. Because the debtors commingled exempt and potentially nonexempt funds in the checking account, the Court must trace what portion of the checking account balance is exempt.

*Tracing*

Exempt funds retain their exempt status, even if they are commingled with nonexempt funds, so long as the Court is reasonably able to trace which funds are exempt and which must be turned over to the trustee. *See In re Maine*, 461 B.R. 723, 730 (Bankr. S.D. Ohio 2011). *Accord In re Slane*, 537 B.R. 864 (Bankr. N.D. Ohio 2015) (Gustafson, J.) (discussing two Ohio Supreme Court decisions involving tracing of exempt funds under Ohio law – *Daugherty v. Cent. Trust Co. of Ne. Ohio, N.A.*, 28 Ohio St. 3d 441, 504 N.E.2d 1100 (1986), and *State ex rel. Williams v. Trim*, 145 Ohio St. 3d 204, 2015-Ohio-3372, 48 N.E.3d 501). *See also In re Karn*, No. 13-62446, 2014 WL 3844829, at *4 (Bankr. N.D. Ohio August 4, 2014) (collecting cases). "The tracing of commingled funds is necessarily case-specific." *In re Maine*, 461 B.R. at 730. But in determining the appropriate tracing method, the Court "should consider the policy underlying the exemption and the general rule that exemptions should be construed in favor of the debtor." *Id.* Generally, courts choose between three different tracing methods: (1) first-in, first-out; (2) allocating expenditures in

8

proportion to the ratio of exempt funds to nonexempt funds; or (3) the lowest intermediate balance test. *In re Karn*, No. 13-62446, 2014 WL 3844829, at *9.

In considering which tracing method to apply in this case, the Court is persuaded by the treatment of retirement accounts in Ohio. In the case of retirement accounts, "the recent trend in Ohio appears to be the use of the [lowest intermediate balance test]." *Id.* at *10 (collecting cases). Although both pensions and Social Security benefits differ from a retirement account in that they are intended to cover day-to-day expenses, they are also frequently the only source of income "to protect a debtor from becoming a public charge." *Id.* This is the situation here as the debtors' only regular sources of income were their pensions and Social Security benefits, and the trustee has not argued that any portion of the debtors' pensions is not "reasonably necessary" for the debtors' support. *See* Ohio Rev. Code § 2329.66(A)(10)(b). In this case, both the specific policy of supporting elderly debtors to the extent reasonably necessary and the general policy of construing exemptions in favor of debtors are best achieved by the tracing method that spends pension and Social Security benefits last. *In re Karn*, No. 13-62446, 2014 WL 3844829, at *10. Additionally, in the case where pensions and Social Security benefits constitute nearly all of the debtors' income, the lowest intermediate balance test is "relatively easy to apply and promotes

9

uniformity and predictability, which are all attributes long valued by bankruptcy law." *Id. See also In re Maine*, 461 B.R. at 733-34 (the lowest intermediate balance test promotes uniformity, whereas other tracing methods "dependent upon the timing of deposits and withdrawals could result in arbitrary results because of the particular timing o the debtors' finances"). For the above reasons, the Court finds that the lowest intermediate balance test is the appropriate method to trace the exempt funds in the checking account in this case.

*Application of the Lowest Intermediate Balance Test
to the Debtors' Checking Account*

The lowest intermediate balance test works by starting at the moment that exempt and nonexempt funds are first commingled in an account. Any expenditures from that time on are presumed to be spent first from the nonexempt funds. If, after the initial commingling, all of the nonexempt funds held in the account are spent, then any further withdrawals are taken from the exempt funds. After exempt funds are spent, they are considered dissipated and cannot be replaced by later deposits of nonexempt funds. Any new, nonexempt funds that are deposited before all of the exempt funds are depleted should be spent before any of the exempt funds still in the account. Finally, if the account balance is ever completely depleted, then any exempt value previously held in that account may

10

not be recovered.  *See In re Maine*, 461 B.R. at 732 (quoting *First Fed. of Michigan v. Barrow*, 878 F.2d 912, 916 (6th Cir. 1989)).  *See also In re Karn*, No. 13-62446, 2014 WL 3844829, at *9.

The Court's application of the lowest intermediate balance test to the exemptions claimed by the debtors in their joint checking account is as follows.

First, there is apparently no dispute as to the following exemptions claimed by the debtors:

- Dee Greer's Social Security of $692 deposited on February 24, 2016;
- Richard Greer's pension of $1,396.98 deposited on March 1, 2016; and
- Dee Greer's pension of $270.08 deposited on March 1, 2016.

From the time that these exempt funds were deposited, the lowest intermediate balance in the account never fell below the $2,517.06 in the account as of the petition date.  Therefore, the presumption is that all intermediate withdrawals came first from nonexempt funds.

To the extent that funds were still available after first spending all nonexempt funds, this would leave as exempt:

- Dee Greer's Social Security of $692 deposited on February 24, 2016;
- Richard Greer's pension of $1,396.98 deposited on March 1, 2016; and
- Dee Greer's pension of $270.08 deposited on March 1, 2016.

11

As noted earlier, the balance in the account after these deposits never dropped below the $2,517.06 balance as of the petition date. The three exempt deposits listed immediately above total $2,359.06. Subtracting these three exemptions from the $2,517.06 balance as of the petition date leaves a net of $158. However, the debtors have also claimed exemptions under Ohio Rev. Code § 2329.66(A)(3) and/or (A)(18) to cover the remaining $158.

Assuming that the remaining $158 in the account is attributable to Richard Greer's federal and state income tax refunds deposited on February 24, 2016, and March 3, 2016, respectively, Richard Greer is entitled to claim the $158 as exempt under Ohio Rev. Code § 2329.66(A)(3). Accordingly, the debtors are entitled to exempt the entire balance in their checking account as of the petition date.

In contrast with the Court's analysis, the trustee objects to the debtors' claim of exemptions and seeks a turnover of $881.13 from the checking account. The thrust of the trustee's objection is that Richard Greer's tax refunds are solely Richard Greer's property, therefore, Dee Greer cannot claim any of this property as exempt. Although this may be true, the argument is inapt here. Under the lowest intermediate balance test, all but $158 of the funds in the checking account on the petition date were exempt using just the undisputed Social Security and pension exemptions identified above. Even presuming that Dee Greer has no

12

interest in the $158 remainder, Richard Greer could exempt the remaining $158 under Ohio Rev. Code § 2329.66(A)(3).

The trustee appears to have arrived at his $881.13 turnover figure by starting with the $3,570.19 checking account balance at the beginning of February 25, 2016, as opposed to the petition date. The trustee then exempted Dee Greer's $692 Social Security benefit and $270.08 pension, Richard Greer's $1,396.98 pension, and $330, which the trustee calculated as the remainder of Richard Greer's $1,225 wildcard exemption after subtracting Richard Greer's $7 half of the $14 cash on hand and the $888 for Richard Greer's Buick Rendezvous. For reasons that are not entirely clear to the Court, the trustee appears to have not applied Richard Greer's $450 cash on hand exemption. The result is a turnover figure that neither reflects the application of the lowest intermediate balance test nor uses all of the exemptions claimed by the debtors.

*Coin Collection*

On the date the petition was filed, Richard Greer also had an interest in $500 in value derived from a coin collection. Based on an addendum to the debtors' second response, the debtors intend to apply the remainder of Richard Greer's Section 2329.66(A)(18) wildcard exemptions to the value of the coin collection. (Docket No. 36). Richard Greer has already used $888 of his $1,225

13

Ohio Rev. Code § 2329.66(A)(18) wildcard exemption on his interest in the Buick Rendezvous. Therefore, Richard Greer may exempt $337 of value derived from the coin collection. This assumes that the debtors would use a total of $14 from one or both of their $450 exemptions under Ohio Rev. Code § 2329.66(A)(3) to exempt the $14 in cash on hand. In other words, to the extent that the coin collection still existed as of the petition date, Richard Greer is entitled to exempt $337 of the coin collection's value under Ohio Rev. Code § 2329.66(A)(18).

In theory, Richard Greer would also be able to apply the remainder of his exemption under Ohio Rev. Code § 2329.66(A)(3) to the face value of the coin collection. For example, if the coin collection consisted of 50 silver dollars with a face value of $50 and an appraised value of $500, he could also claim $50 of the coin collection as exempt under Ohio Rev. Code § 2329.66(A)(3). However, there is nothing in the record to indicate the face value of the coin collection. Moreover, Richard Greer cannot use Ohio Rev. Code § 2329.66(A)(3) to exempt specific coins. For example, using the same hypothetical as above, Richard Greer could not use $50 of his remaining exemption under Ohio Rev. Code § 2329.66(A)(3) to exempt the entire $500 appraised value of the 50 silver dollars. *Cf. In re Karn*, No. 13-62446, 2014 WL 3844829, at *9 ("money is fungible").

CONCLUSION

For the reasons stated above, the Court overrules the trustee's objection to the debtors' claim of exemption in the checking account.  Because the debtors have not amended their exemptions in Schedule C to conform to arguments made in open court and in their briefing, the Court will give the debtors until August 31, 2016, to file a second amended Schedule C under Rule 1009.  The trustee or other party in interest will then have 30 days to object to the debtors' amended exemptions under Rule 4003.  Because there are a number of uncertainties as to the status of the coin collection, including whether it is of inconsequential value and benefit to the estate given the amended schedule of exemptions likely to be filed, the Court overrules, without prejudice, the trustee's motion for turnover.

IT IS SO ORDERED.